IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GREGORY HOPE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  3:16-cv-327-NJR-DGW |
| | ) | |
| TAMMY WELTY, KIM WOODS, STEVE DUNCAN, and UNKNOWN PARTY, | ) ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).  For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Welty and Woods (Doc. 41) and joined by Defendant Duncan be **DENIED** as to Defendants Welty and Woods and **GRANTED** as to Defendant Duncan, and that the Court adopt the following findings of fact and conclusions of law.

INTRODUCTION

Plaintiff, Gregory Hope, is an inmate currently incarcerated at the Illinois River Correctional Center.  On March 25, 2016, he filed a Complaint, pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his health needs on and after August 4,

2015 (Count 1) when he was housed at the Lawrence Correctional Center ("Lawrence"). According to the Complaint, Plaintiff (who was 62 years old during the relevant time period) experienced chest pains and numbness in his extremities. He pressed the panic button in his cell but help did not arrive until two hours later: Nurse Welty was summoned but indicated that she would see Plaintiff an hour and twenty minutes later when he was scheduled for an insulin shot. When Plaintiff arrived for his shot, Nurse Welty did not treat Plaintiff's symptoms, did not refer him to a doctor, and sent him back to his cell. Six hours later, Plaintiff stopped Nurse Woods, who was making medication rounds, and sought medical help. Nurse Woods indicated that Plaintiff would be put in to see a doctor; however, Plaintiff did not see a doctor. Following these events, Plaintiff filed an emergency grievance seeking immediate medical treatment and mailed it to Warden Duncan. The grievance was signed by a designee of Warden Duncan and rejected as not presenting an emergency. A week later, on August 11, 2015, Plaintiff suffered a heart attack. He sought treatment from another nurse (who is not a defendant herein) forty-five minutes after the attack began to no avail. He pressed the panic button in his cell but help did not arrive until an hour and forty-five minutes later. Plaintiff was then admitted to a hospital where he received surgery.

Plaintiff is proceeding on one count of deliberate indifference to his health needs in violation of the Eighth Amendment against Nurses Welty and Woods, and Warden Steve Duncan, as well as unknown parties. Defendants Welty and Woods filed a motion summary judgment on the issue of exhaustion of administrative remedies on August 4, 2016 (Doc. 41). On August 22, 2016 Defendant Duncan was granted leave to join in Defendants Welty and Woods' motion. Plaintiff responded (Doc. 50) and a hearing pursuant to *Pavey v. Conley*, 544

F.3d 739 (7th Cir. 2008) was held on November 21, 2016.

### FINDINGS OF FACT

Plaintiff submitted a number of grievances related to the events outlined above:

1. August 4, 2015 emergency grievance (Doc. 42-4, pp. 1-2): In this grievance, which mirrors the Complaint, Plaintiff states that Nurse Welty refused to provide medical care on that date. The grievance was deemed not an emergency on August 6, 2015 and Plaintiff was directed to "submit this grievance in the normal manner."

2. August 16, 2015 emergency grievance (Doc. 50-4, p. 1): In this grievance, Plaintiff complains of the care that he received after his heart attack and surgery. The grievance does not name any particular person, just the "nursing staff." The grievance was deemed not an emergency on August 17, 2015 and Plaintiff was directed to "submit this grievance in the normal manner."[1]

3. August 24, 2015 grievance (Doc. 50-5, pp. 1-2): In this grievance, Plaintiff states that he had been experiencing chest pains for 10 days and that, on August 4, 2015, he was refused medical care by Nurse Welty. Plaintiff also indicates that various correctional officers (he only names Stanley) failed to provide medical care and that the "healthcare unit was negligent in their duty to treat me." The counselor responded on September 1, 2015 – the counselor did not respond to the claim of lack of medical care but rather indicated that the names of officers could be sought through a FOIA request and that Plaintiff's medical records could be sought through a

---

[1] The Court notes that Plaintiff submitted a second grievance dated August 16, 2015 as an exhibit along with his complaint (*see* Doc. 1-1, p. 7). This grievance relates to confiscation of Plaintiff's medical treatment instructions, prescriptions, x-rays, and other personal items following Plaintiff's hospital stay. As this grievance does not relate to the claims pending in this lawsuit, the Court will not consider it further.

written request to the medical staff.

4. September 11, 2015 grievance (Doc. 50-7, pp. 1-2): In this grievance, which begins with complaints about post-operative care, Plaintiff states that Nurse Welty refused medical care prior to his heart attack. He also states that "I ask nurse Wood to put me on the doctor call line, and she said that she would. But guess what happened then? I have a file of medical issues. I should have not been total ignored by the nurses nor by the peoples in the cell-house [sic]." Plaintiff indicates that the nursing staffs' failure to treat his symptoms exhibited negligence and caused pain and suffering. The counselor responded to this grievance on September 16, 2015. The response is difficult to understand, but it appears that the counselor told Plaintiff that his health issues were being managed adequately.

**These first four grievances were received by the ARB on January 6, 2016. The ARB addressed them together in a response dated January 11, 2016 (Doc. 50-14). The ARB indicated: "No grievance officer's report as required."**

5. September 14, 2015 grievance (Doc. 50-8, pp. 1-2): In this grievance, Plaintiff complains generally about the health care that he received at Lawrence and mentions the treatment (or lack thereof) he received from Nurse Welty and Woods during the time of his heart attack. The counselor responded on September 17, 2015: "Per AWP Treadway, you need to specify your healthcare concerns that you feel isn't being handled appropriately. If you have concerns about medical treatment, send a request for AWP for it to be addressed and [unreadable] an opinion of the Dr."

Plaintiff submitted this grievance to the grievance officer on September 24, 2015 (Doc. 50-10). The grievance officer stated "Per Medical Records, offender has been seen several times for

medical issues" and that future medical requests should be addressed through the sick call process. The grievance officer noted that Plaintiff did not name any particular medical condition except his heart attack and that he was treated by an outside facility for that condition. The Warden concurred on December 10, 2015. Plaintiff appealed to the ARB which responded on April 8, 2016 (Doc. 50-11). The ARB indicated that there was "No justification provided for additional consideration" because Plaintiff "fails to comply with DR 504.810. No date of incidents provided in grievance, therefore unable to review."

In their motion for summary judgment, Defendants contend that the September 14, 2015 grievance is the only relevant grievance as Plaintiff's other grievances filed in August and September, 2015 were not properly or timely appealed to the ARB. Further, Defendants contend that the September 14, 2015 grievance is insufficient to exhaust Plaintiff's claims in this lawsuit as the ARB denied Plaintiff's appeal on April 8, 2016 asserting that it was unable to review the grievance on the merits because Plaintiff failed to include sufficient detail of the occurrence complained of.

## LEGAL STANDARDS

### *Summary Judgment Standard*

Summary judgment is proper only if the moving party can demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in

genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. The Seventh Circuit has stated summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

*Exhaustion Requirements under the PLRA*

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that § 1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. See

*Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id*. at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

*Exhaustion Requirements under Illinois Law*

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. § 504.810(b). The grievance officer is required to advise the CAO at the facility in writing of the findings on the grievance. *Id*. § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id*. § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the ARB for a final decision. *Id*. § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate's administrative remedies are not exhausted until the appeal is ruled on by the ARB. *See Id*. The ARB shall make a final determination of the grievance within six months after receipt of the

appealed grievance, where reasonably feasible under the circumstances. *Id*. § 504.850(f).

An inmate may request a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id*. § 504.840. If, after receiving a response from the CAO, an offender feels the grievance has not been resolved, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision. *Id*. § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id*. Prisoners are required only to provide notice to "responsible persons" about the complained of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

**CONCLUSIONS OF LAW**

Based on the evidence in the record and arguments made by the parties in their briefs and

at the hearing, the Court finds that Plaintiff exhausted his administrative remedies as to Defendants Welty and Woods, but not as to Defendant Duncan, prior to filing this lawsuit.

In his opposition brief and at the Pavey Hearing, Plaintiff asserted that he submitted his grievances dated August 4, August 16, August 24, and September 11, 2015, to the grievance officer for review, but never received a response. Plaintiff asserts that because there are no instructions in the Illinois Administrative Code regarding how to address and resolve grievances to which no response is received, he submitted these grievances directly to the ARB. It is undisputed that on January 11, 2016, the ARB returned the grievances indicating "no grievance officer's report as required" (*see* Doc. 50-15). The Court finds Plaintiff's assertion regarding his attempt to submit these grievances to the grievance officer for review credible.

First, the Court questions the accuracy of the grievance records at Lawrence Correctional Center. In particular, the Court notes that an entry in Plaintiff's cumulative counseling summary (Doc. 50-16) dated December 28, 2015 indicates that counselor Strubhart responded to a grievance dated December 11, 2015. Importantly, Counselor Strubhart noted in this entry that "[n]o other grievances received or logged from him *this year*" (*id.*) (emphasis added). A review of the grievances submitted into evidence indicates that this notation is patently incorrect. Indeed, each of the above-mentioned grievances received a response from either the warden (or his designee) or a correctional counselor. The Court cannot discern how these grievances were not noted as logged or received at Lawrence. As such, the Court finds Lawrence's grievance records unreliable in this instance. Said finding lends support for Plaintiff's argument that he submitted the above-mentioned grievances to the grievance officer for review, but never received a response.

The Court finds Plaintiff's argument is further supported by his letter dated December 29, 2015 directed to the ARB, which corroborates his position on exhaustion. In this letter, Plaintiff explains that he never received a response from the grievance officer to his August 4, 2015 grievance and the grievance officer was refusing to provide a response. The Court finds this letter persuasive to support Plaintiff's position as it was written by Plaintiff well before this lawsuit was filed and before the issue of exhaustion of administrative remedies was before the Court.

Finally, the Court notes that it has carefully reviewed Plaintiff's offender requests dated October 19, 2015 and December 23, 2015. As these requests do not specifically identify what grievances are being inquired about or considered, the Court does not find these documents persuasive in either supporting or refuting Plaintiff's assertion.

For the aforementioned reasons, the Court finds that Plaintiff was thwarted in his attempts to exhaust his August 4, August 16, August 24, and September 11, 2015 grievances at the institutional level. As inmates, such as Plaintiff, are only required to exhaust those remedies that are available to them, the Court finds that Plaintiff sufficiently exhausted his administrative remedies with respect to the above-mentioned grievances. The Court's inquiry, however, does not end here. The Court must also consider whether the content of these grievances is sufficient to exhaust Plaintiff's claims against Defendants Welty, Woods, and Duncan.

Plaintiff's August 4, 2015 grievance clearly complains about the actions of Nurse Welty at issue in this lawsuit. Indeed, this grievance identifies Nurse Welty by name and provides a time and apparent date (the date of the writing) of the alleged encounter. The details in this grievance are sufficient to pass muster under § 504.801(b) of the Illinois Administrative Code.

With regard to Nurse Woods, the Court finds that Plaintiff's September 11, 2015 grievance sufficiently exhausts his claims against this Defendant. In this grievance, Plaintiff recounts his complaints about his medical treatment immediately prior to experiencing his heart attack. Although the relief requested by Plaintiff is not directly related to Nurse Woods, the Court finds that the Illinois Administrative Code does not require such. This grievance, read in its entirety, should have given officials at Lawrence notice that Plaintiff was complaining about the medical treatment, or lack thereof, provided by Nurse Woods prior to Plaintiff suffering his heart attack.

The Court, however, finds that these grievances do not exhaust Plaintiff's claim against Defendant Duncan as there is no reference to this Defendant or his actions related to denying any grievance as an emergency in the record before the Court.

The parties also spent considerable time addressing Plaintiff's September 14, 2015 grievance in their briefs and at the Pavey Hearing. The parties do not dispute that Plaintiff's counselor responded to this grievance on September 17, 2015. Plaintiff then appealed the decision to the grievance officer who responded on November 25, 2015, with the Chief Administrative Officer ("CAO") concurring with the grievance officer's response on December 10, 2015. Plaintiff timely appealed this decision to the ARB, which returned the grievance to Plaintiff on April 8, 2016 noting that it failed to comply with "DR 504 810" in that it did not contain the date of the incidents (*see* Doc. 50-11). As Plaintiff filed this lawsuit on March 25, 2016 and Plaintiff did not receive any response from the ARB regarding this grievance until April 8, 2016, the Court finds that this grievance was not fully exhausted prior to Plaintiff filing his lawsuit. As such, this grievance is insufficient to exhaust any of Plaintiff's pending claims.

## RECOMMENDATIONS

For the foregoing reasons, it is hereby **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Welty and Woods (Doc. 41) and joined by Defendant Duncan be **DENIED** as to Defendants Welty and Woods and **GRANTED** as to Defendant Duncan; that the Court **FIND** Plaintiff did not exhaust his administrative remedies as to Defendant Duncan prior to filing suit; that Defendant Duncan be **DISMISSED WITHOUT PREJUDICE**; and that the Court adopt the foregoing findings of fact and conclusions of law.

If this Report and Recommendation is adopted, Plaintiff will be proceeding in this action on one count of deliberate indifference against Defendants Wood and Welty.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: January 30, 2017**

        **DONALD G. WILKERSON**
        **United States Magistrate Judge**