IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GREGORY HOPE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-CV-327-NJR-MAB |
| | ) | |
| TAMMY WELTY, KIM WOODS, PATRICK RIGGS, TENIELLE ALGER, C/O COVAT, LINDA HOVEY, JIMMIE STANLEY, KELLY RICHARDSON, and UNKNOWN PARTIES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of Magistrate Judge Donald G. Wilkerson[1] (Doc. 123), which recommends the undersigned District Judge grant in part and deny in part the Motion for Summary Judgment filed by Defendants Tenielle Alger, Michael Conant, Kelly Richardson, Patrick Riggs, and Jimmy Stanley ("the IDOC Defendants") (Doc. 109).[2] The Report and Recommendation further recommends this Court deny the Motion for Summary Judgment filed by Defendants Linda Hovey, Tammy Welty, and Kim Woods ("the Wexford Defendants") (Doc. 110). Defendants timely objected to the Report and Recommendation (Docs. 126, 127). For the reasons set forth below, Defendants' objections are overruled, and the Court adopts Judge

---

[1] This case was subsequently transferred to United States Magistrate Judge Mark A. Beatty (Doc. 129).
[2] The Clerk of Court is directed to correct Defendants' names on the docket sheet as follows: Michael Conant for C/O Covat and Jimmy Stanley for Jimmie Stanley.

Wilkerson's Report and Recommendation in its entirety.[3]

## BACKGROUND

Gregory Hope, an inmate in the Illinois Department of Corrections ("IDOC"), brings this action under 42 U.S.C. § 1983 for alleged constitutional violations that occurred while he was housed at Lawrence Correctional Center (Doc. 1). Specifically, Hope is proceeding against all defendants on one count of deliberate indifference to a serious medical need in violation of the Eighth Amendment (Doc. 65).

Hope, a 62-year-old diabetic with high blood pressure, awoke around 7:30 a.m. on August 4, 2015, feeling queasy, dizzy, and uneasy, and he had a pain in his chest that he rated at a level 2 out of 10 (Doc. 109-1, p. 18, 165). He also had numbness in his right arm and leg, and he immediately knew something was wrong (*Id.*, p. 21). Within minutes of waking, Hope tried to notify the gallery officer on duty, Officer Jimmy Stanley, that he needed help (*Id.*, pp. 19-20). Hope repeatedly pressed the panic button in his cell, which is only to be used by inmates when there is violence occurring or an inmate is seriously ill (*Id.*). Prior to August 4, 2015, Hope had never used the panic button (*Id.*, p. 20).

Hope claims he and his cellmate continued to press the panic button repeatedly while also hollering out the chuckhole of the cell's solid steel door in an attempt to get the attention of the gallery officer (*Id.*, p. 22). Hope told his cellmate that he felt like he was having a stroke or heart attack, that the right side of his body was tingling and numb, and he could barely stand (*Id.*, p. 23).

---

[3] Discovery closed on July 6, 2018, and the unknown defendants were never identified. Accordingly, John or Jane Does 1-4 will be dismissed with prejudice.

Despite their repeated calls for help, no one came for two and a half hours (*Id.*). Hope admitted he had no way of telling time in his cell but claimed he could judge the time that had passed by the activities that were going on in the prison, such as the lunch line forming (*Id.*). Hope testified he did not go to lunch that day because he did not have the strength to go (*Id.*, p. 32). He also did not attempt to speak to prison staff while the line was forming because he felt that most officers would not listen (*Id.*, p. 31).

Around 11:30 a.m. or noon, Stanley arrived at Hope's cell (*Id.*, p. 33). Stanley told Hope that the officer "in the bubble" informed him the panic button repeatedly was being pressed (*Id.*, p. 34). Hope told Stanley he was having chest pains and numbness and asked Stanley for help (*Id.*, pp. 35-36). Stanley said he would contact the Health Care Unit and get back to Hope with the results (*Id.*, p. 36). Stanley did not return, however, until about 2:30 p.m., when it was time for shift change (*Id.*). Stanley told Hope that Nurse Welty in Health Care said he would be seen at 5 p.m. when he went in for his insulin (*Id.*, p. 37).

Stanley disputes this account. According to Stanley, he does not recall these events on August 4, 2015, and he remembers nothing about Hope until August 11, 2015 (Doc. 109-6, p. 10-11). Stanley further testified that if an inmate pushes his panic button, a light will flash on the computer in the control pod to indicate the button has been pressed (*Id.*, p. 7). There is one person assigned to the control pod 24 hours a day, but if the pod officer is not watching the screens, he may not immediately see a panic alert was pressed (*Id.*). The protocol is to then go to the cell and see why it was pressed (*Id.*). If the panic call turns out to be a medical emergency, officers will either call a Code 3 for an emergency or contact Health Care and the zone supervisor (*Id.*). Hope admitted that the

officer in the control booth ("the bubble") is the officer who gets the panic message and that he did not know who was assigned to the bubble on August 4 (Doc. 109-1, p. 87). Stanley was not in the bubble on August 4, 2015 (Doc. 109-6, p. 124).

Around 3 p.m. on August 4, Hope lined up to go to Health Care for his diabetes (Doc. 109-1, pp. 40-41). When he saw Nurse Welty for his insulin, he told her he had been having chest pains all morning and numbness on his right side, and that he felt as though he was having a heart attack or stroke (*Id.*, p. 44). She responded that he had already seen the doctor and already been diagnosed, and there was nothing wrong with him (*Id.*, p. 45). Hope tried to argue that he never saw the doctor that day; if he had, it would have been logged in his records (*Id.*). Nurse Welty said she would not do anything besides send him back to his unit (*Id.*). Nurse Welty disputes this version of events and testified she did not have any conversation with Hope about chest pain prior to August 11, 2015 (Doc. 111-1, pp. 12, 14).

After he was denied medical care for his chest pain on August 4, 2015, Hope filed an emergency grievance (Doc. 109-1, p. 53). The emergency grievance went to the warden's office, where Kelly Richardson was serving as a confidential assistant to the warden and had authority, in the warden's absence, to determine whether a grievance was an emergency (Doc. 109-5, p. 4). Richardson testified that a grievance constitutes an emergency if there is a substantial risk of imminent personal injury, sexual abuse, or anything putting the inmate in serious harm (*Id.*, p. 5). Richardson further testified that, if the grievance mentioned chest pain, it was her practice to contact the Health Care Unit and ensure the offender is being seen or that Health Care is at least aware of the issue

(*Id.*). Richardson could not recall, however, whether she contacted Health Care in this instance (*Id.*). On August 6, 2015, Richardson deemed Hope's grievance a non-emergency, but she could not recall why (*Id.*)

One or two days after August 4, 2015, Hope approached Nurse Hovey in Health Care and gave her a request slip to be seen by the doctor (Doc. 109-1, p. 53). He asked Nurse Hovey to turn it in for him. She refused and told him to put it in the request box and go through the proper chain (*Id.*). So, he did (*Id.*, p. 54). Nurse Hovey disputes Hope's testimony, stating that if an inmate complains of chest pain while in the insulin line, she would not instruct him to fill out a sick call slip but rather would make a note in his chart and have him assessed immediately (Doc. 111-3, p. 21). She further testified she was not aware Hope was complaining of chest pain prior to August 11, 2015 (*Id.*, p. 9).

Hope also spoke with Nurse Woods while she was passing out medication on her rounds (Doc. 109-1, p. 59). He told Nurse Woods about his chest pains, and, while she could not do anything about it, she said she would remind someone and put him on the doctor's sick call for the next day (*Id.*, p. 60). When Hope asked Nurse Woods the following day why he had not been put in to see the doctor, Nurse Woods said she told Nurse Hovey to put him on the doctor's call list (*Id.*). Nurse Hovey said Nurse Woods hadn't told her anything (*Id.*, p. 61). Nurse Woods disputes that Hope complained of chest pain to her and does not recall whether he ever asked to be put on a doctor's call list (Doc. 111-2, p. 9).

Other than being seen for his insulin, Hope was not seen in the Health Care Unit between August 4 and August 11 (*Id.*, p. 62). On August 11, Hope had a heart attack

(Doc. 111-6, p. 5). He awoke that day feeling like he had been run over by a train (Doc. 109-1, p. 65). He described the feeling as someone reaching into his chest, putting his heart into a vise-grip, and squeezing it as hard as he could (*Id.*). He also felt numbness, coldness, and pain on the right side of his entire body. He immediately told his cellmate to press the panic button, which his cellmate did for about 10 to 20 minutes (*Id.*, p. 68).

When an officer arrived, Hope told him he thought he was having a heart attack (*Id.*, p. 70). A lieutenant came in and immediately called a Code Three for an emergency (*Id.*, p. 79). Hope was taken to the Health Care Unit, where he passed out with no pulse and had to be shocked with an automatic external defibrillator (Doc. 111-1, pp. 13-14). Rescue breaths were also administered through an Ambu bag (*Id.*, p. 14). Hope's pulse was restored, and he was transferred by ambulance to Lawrence County Memorial Hospital (*Id.*). From there, he was transferred to Carle Foundation Hospital, where a diagnostic cardiac catheterization procedure showed a total blockage of the left anterior descending artery requiring a stent to be implanted (Doc. 111-6, p. 8).

Hope was told by the doctor who performed his surgery that—had the nurses and prison administration done their job and administered a simple blood test or EKG—they would have found that his heart was in distress and the whole incident could have been avoided (Doc. 109-1, p. 178).

### THE REPORT AND RECOMMENDATION AND OBJECTIONS

On November 1, 2018, Judge Wilkerson issued a Report and Recommendation on Defendants' motions for summary judgment. With regard to the IDOC Defendants, Judge Wilkerson recommended that Defendants Alger, Conant, and Riggs be granted summary

judgment, as they presented evidence they were absent from work on August 11, 2015—the only date in the Amended Complaint that they were alleged to be deliberately indifferent. Thus, there are no facts upon which a reasonably jury could conclude these Defendants were present on August 11, 2015, let alone deliberately indifferent to Hope's medical needs.

With regard to Defendant Richardson, Judge Wilkerson noted that while Richardson's standard practice was to check with the Health Care Unit before denying a grievance as an emergency, there is no evidence that Richardson contacted the Health Care Unit before denying Hope's grievance on August 6, 2015. And, even if she had, Hope had not been examined by the Health Care Unit. So it is unclear what information the Health Care Unit could have provided Richardson that would have suggested Hope had been treated or assessed for his chest pain. Thus, the only information Richardson had was that Hope had chest pain and the Health Care Unit had either refused or failed to treat him. Based on this evidence, a jury could conclude that Richardson was deliberately indifferent to a serious medical need.

As to Defendant Stanley, Judge Wilkerson found that Hope's testimony regarding the events of August 4, 2015, were uncontroverted since Stanley could not remember the incident. And a jury could find the failure to respond to a panic button for over two hours was deliberate indifference to a serious medical need. Thus, summary judgment would not be proper with regard to that claim. As to the remainder of Hope's claims against Stanley, however, Judge Wilkerson found that Stanley acted appropriately and that no reasonable jury could find him deliberately indifferent.

Judge Wilkerson further found that neither Richardson nor Stanley were entitled to qualified immunity because the law is clearly established that an official can be liable for deliberate indifference when the official knows of and disregards an excessive risk to an inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Furthermore, an inmate's correspondence to a prison supervisor may "establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Based on this law, Stanley should have been aware that ignoring Hope's panic call for hours would qualify as deliberate indifference, and Richardson should have known that ignoring Stanley's written grievance could violate the Eighth Amendment.

With regard to the Wexford Defendants, Judge Wilkerson recommended their motion for summary judgment be denied in its entirety. Judge Wilkerson found Defendants' argument that Hope's testimony was self-serving and, thus, could not provide the basis for denying summary judgment, to be unpersuasive. Furthermore, while Defendants argue they were unaware of Hope's medical complaints between August 4 and August 11, Hope's testimony contradicts those assertions—thus creating a genuine issue of material fact that cannot be resolved on summary judgment. Finally, Judge Wilkerson dismissed Defendants' argument that a plaintiff must offer "verifying medical evidence" that a delay in treatment (rather than the inmate's underlying condition) caused some degree of harm. Judge Wilkerson pointed to testimony from Hope's treating physician, who testified that intermittent chest pains can be evidence of a cardiac incident. And, a week after Hope reporting having chest pain, he had a heart

attack—and only survived after being resuscitated and a stent implanted in his artery. Thus, there is evidence that tends to confirm or corroborate Hope's claim that the failure to treat his symptoms between August 4 and August 11 caused him harm.

## DISCUSSION

When timely objections are filed, the Court must undertake *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record, give fresh consideration to those issues to which specific objections have made, and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). If only a "partial objection is made, the district judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the

evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

In responding to a motion for summary judgment, the nonmoving party may not simply rest upon the allegations contained in the pleadings, but must present specific facts to show a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–26; *Anderson*, 477 U.S. at 256–57. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact only exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

I. **The IDOC Defendants**

The IDOC Defendants objected to the Report and Recommendation on December 3, 2018 (Doc. 126). As to Richardson, Defendants argue that the denial of a grievance is insufficient to demonstrate personal liability, citing to *Sims v. Jairret*, No. 18-cv-1102-NJR, 2018 WL 2433585 (S.D. Ill. May 30, 2018). Alternatively, Defendants suggest Richardson is entitled to qualified immunity because she cannot be responsible for incorrectly guessing how to treat Hope's grievance. As to Stanley, Defendants object only to Judge

Wilkerson's recommendation that summary judgment be denied with regard to Stanley's delay in responding to the panic button, arguing the evidence is too slight to be sufficient to proceed on that claim. Specifically, they assert that the officer in the bubble had to alert Stanley that the indicator light was going off, and Hope has not put forth any evidence that Stanley was aware the panic button had been pressed.

### A. Defendant Richardson

Defendants first argue that Richardson cannot be held personally liable simply for denying a grievance. It is true that non-medical personnel not directly involved in an inmate's medical care are usually not liable for denying a grievance. *See Gevas v. Mitchell*, 492 F. App'x 654, 660 (7th Cir. 2012). Nevertheless, "[a]n inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation. *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). That is, the plaintiff must show that because of the purported letters, the defendant officials knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated. *Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996). "[O]nce an official is alerted to an excessive risk to inmate safety or health through a prisoner's correspondence, 'refusal or declination to exercise the authority of his or her office may reflect deliberate disregard.'" *Perez*, 792 F.3d at 782 (quoting *Vance*, 97 F.3d at 993).

Here, the evidence is that Hope submitted an emergency grievance on August 4, 2015, complaining that he had not been seen for his chest pain despite being a 62-year-old with high blood pressure and diabetes. Two days later, Richardson reviewed and

denied that the grievance was an emergency. While she testified it was her practice to contact the Health Care Unit if a grievance mentions chest pains to ensure the offender will be examined, she could not recall whether she contacted the Health Care Unit in this instance. Based on these facts, a reasonable jury could find that Richardson was alerted to an excessive risk to Hope's health in that he was not being treated for his chest pain. She then turned a blind eye to that risk by denying the grievance was an emergency. Accordingly, summary judgment is not proper on these grounds.

Alternatively, Defendants argue Richardson is entitled to qualified immunity because she cannot be responsible for incorrectly guessing how to treat Hope's grievance. But Richardson did not have to guess how to treat the grievance, as the procedure for handling emergency grievances is laid out in the Illinois Administrative Code. If there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender, a grievance shall be handled on an emergency basis and processing of the grievance shall be expedited. 20 ILL. ADMIN. CODE § 504.840(a). Furthermore, the law is clear that an inmate's correspondence can establish a basis for personal liability if the correspondence provides sufficient notice of a constitutional deprivation. *Perez*, 792 F.3d at 782. Here, a jury could find that Hope's grievance showed he was at risk of imminent injury and put Richardson on notice that his constitutional rights were being violated when his complaints of chest pain were being ignored by prison staff. Accordingly, Richardson is not protected by qualified immunity, and Defendants' objection is overruled.

### B. Defendant Stanley

With regard to Defendant Stanley, Defendants object only to Judge Wilkerson's recommendation that summary judgment be denied with regard to Stanley's delay in responding to the panic button. Defendants argue the evidence is too slight to be sufficient to proceed on that claim. Specifically, they assert that the officer in the bubble had to alert Stanley that the indicator light was going off, and Hope has not put forth any evidence that Stanley was aware the panic button had been pressed.

Stanley has no recollection of the events of August 4, 2015, so he could not rebut Hope's testimony that he waited two and a half hours for a response to his panic call and tried to call out to the gallery officer through the chuckhole. Maybe it is true that Stanley was unaware the panic button had been pressed. Or, maybe he did know and chose not to investigate. At this point, determining what really happened and whose testimony to credit is a function of the jury—not the Court. Thus, Defendants' objection is overruled.

As to the remaining claims against Stanley, as well as the claims against Defendants Riggs, Alger, and Conant, there is no objection to Judge Wilkerson's conclusion that summary judgment should be granted in their favor, and the Court finds no clear error in Judge Wilkerson's line of reasoning. *See Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."). Accordingly, summary judgment shall be granted on these claims.

II.  **The Wexford Defendants**

The Wexford Defendants also objected to the Report and Recommendation on December 3, 2018 (Doc. 127). Defendants argue that Hope failed to establish they had any knowledge he was suffering from chest pain, as he has presented no evidence other than his own self-serving testimony. They further argue Judge Wilkerson disregarded the evidence presented by Defendants and impermissibly relied on inadmissible hearsay when he found that there was evidence corroborating Hope's claim that the delay in his treatment caused him harm. Finally, Defendants argue their expert witness established that the symptoms of a heart attack cannot last for days, and Hope has presented no medical evidence that his chest pain was related to his heart attack. Thus, he has failed to show any verifying medical evidence that the delay in treatment caused him any harm.

The Court finds the arguments made by Defendants Hovey, Welty, and Woods unpersuasive. Defendants' main argument rests on the idea that Hope's deposition testimony was "self-serving" and, thus, cannot be considered on summary judgment. That is not the law in the Seventh Circuit.

"The Seventh Circuit has emphasized time and again that 'self-serving' sworn testimony is competent evidence at summary judgment that *must* be considered by the Court." *Warren v. Corizon Inc.*, No. 217CV00116JMSMJD, 2017 WL 5290577, at *4 (S.D. Ind. Nov. 13, 2017) (collecting cases). Indeed, the Seventh Circuit has made it perfectly clear that the term *self-serving* "must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). "*Everything* a litigant says in support of a

claim is self-serving, whether the statement comes in a complaint, an affidavit, a deposition, or a trial. Yet self-serving statements are not necessarily false; they may be put to the test before being accepted, but they cannot be ignored." *Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017).

Even Defendants' own citation to *Buie v. Quad Graphics* is inapposite, for the Court there held that a self-serving affidavit *should* be considered when it meets the requirements for evidence on summary judgment. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004); *see also Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("Provided that the evidence meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial—a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts.").

That there are no medical records or other documentary support for Hope's claims does not mean there is *no* evidence supporting his claims. Hope testified under oath and based on personal knowledge that he informed Nurse Welty, Nurse Hovey, and Nurse Woods about his chest pains and that they did nothing in response. Defendants testified that the events did not occur or that they could not recall whether the events occurred. That means there is a genuine issue of material fact for trial.

The Court also is not moved by Defendants' assertion that there is no admissible evidence that a delay in medical treatment caused Hope further harm. Dr. Mehta testified that Hope's intermittent chest pains could have been symptoms of his heart attack

(Doc. 111-4, pp. 15-16). While Dr. Patricia Cole, Defendants' expert witness, testified that symptoms of a heart attack cannot last continuously for days (Doc. 111-6, p. 12), Dr. Mehta explained that it is possible for a patient to have "stuttering" myocardial infarction, meaning the vessel is about to close but is not fully closed (*Id.*, p. 26). For these people, an individual's symptoms may come and go and gradually worsen (*Id.*).

Dr. Mehta also testified that he would tell a patient complaining of chest pain to go to the Emergency Room, where they will do an EKG and a blood test (*Id.*, p. 9). Dr. Cole explained that an EKG can show changes that would be suggestive of a heart attack (Doc. 111-6, p. 7). As far as the blood test goes, Dr. Mehta explained that if two blood tests within six to eight hours come back negative, a doctor can either do a stress test or observe the patient (*Id.*). Dr. Mehta stated that he would recommend a stress test for a patient with high blood pressure complaining of chest pain, and that given Hope's history of high blood pressure and diabetes, had Hope come to him complaining of chest pain, he would have told Hope "[i]t doesn't hurt to do a stress test." (*Id.*, pp. 16-17). As a result of his heart attack, Hope has damage to the front wall of his heart that reduces the pumping ability of his heart and could lead to heart failure (Doc. 111-6, p. 10).

Viewing this evidence in a light most favorable to Hope, a reasonably jury could find that Defendants' delay in treating Hope caused him some degree of harm. At the very least, as noted by Judge Wilkerson, there is evidence that Defendants unnecessarily prolonged his pain by failing to treat his symptoms. Accordingly, the Wexford Defendants' objection to Judge Wilkerson's Report and Recommendation is overruled.

## CONCLUSION

For these reasons, the objection filed by Defendants Kelly Richardson and Jimmy Stanley (Doc. 126) and the objection filed by Defendants Linda Hovey, Tammy Welty, and Kim Woods (Doc. 127) are **OVERRULED**. The Court **ADOPTS** the Report and Recommendation of Judge Wilkerson (Doc. 123) in its entirety.

The Motion for Summary Judgment filed by the IDOC Defendants (Doc. 109) is **GRANTED** as to Defendants Alger, Conant, and Riggs, **DENIED** as to Defendant Richardson, and **GRANTED in part and DENIED in part** as to Defendant Stanley. The Motion for Summary Judgment filed by the Wexford Defendants (Doc. 110) is **DENIED**.

The Clerk of Court is **DIRECTED** to correct Defendants' names on the docket sheet as set forth in footnote 2. And, as directed in footnote 3, John or Jane Does 1-4 are **DISMISSED with prejudice**.

This case shall now proceed to trial on Plaintiff Gregory Hope's claim of deliberate indifference to a serious medical need, in violation of the Eighth Amendment, against Defendants Richardson, Stanley, Hovey, Welty, and Woods.

**IT IS SO ORDERED.**

DATED: February 5, 2019

**NANCY J. ROSENSTENGEL**
**United States District Judge**